UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.                                    CASE NO.  8:07-CR-387-T-17MAP

RODOLPHO CRUZ,
a/k/a "Angel Villegas,"
a/k/a "Kilo."

_____/

ORDER

This cause is before the Court on:

Dkt. 49       Redacted Motion to Dismiss Based on a Violation of the
              Defendant's Constitutional Right to a Speedy Trial
Dkt. 50       Response
Dkt. 51       Supplemental Points and Authorities
Dkt. 59       Government Exhibits
Dkt. 60       Defendant's Exhibit

Defendant Rodolpho Cruz, a/k/a "Angel Villegas," a/k/a "Kilo," moves for an order
dismissing the indictment based on a violation of Defendant's constitutional right to a
speedy trial pursuant to the Sixth Amendment of the United States Constitution.

The Government opposes Defendant's Motion to Dismiss.

The Court conducted an evidentiary hearing on July 29, 2015.

I. FINDINGS OF FACT

A defendant's assertion of the violation of a defendant's constitutional right to a
speedy trial pursuant to the Sixth Amendment is decided on the particular facts of the
case.  The Court applies a "balancing test rooted in functional considerations to

Case No. 8:07-CR-387-T-17MAP

ascertain whether a delay in a defendant's trial deprived him of his constitutional right to a speedy trial." Barker v. Wingo, 407 U.S. 514, 522, 530 (1972).  The Court has considered the documents filed by the Parties, as well as the testimony at the evidentiary hearing on July 29, 2015.  The documents include the Affidavit of Special Agent Daniel Gordon in support of a search warrant to install a tracking device on a 2003 Range Rover used by Defendant Cruz in 2004, and the Florida Highway Patrol Offense Incident Report on the currency seizure on November 22, 2004 (Defendant's Exhibit 2).

At the evidentiary hearing on July 29, 2015, Derek Pollock, Special Agent for the Drug Enforcement Administration, and DUSM Jeff Lavallee testified for the Government.  Sofia Valencia, the step-daughter of Defendant Cruz, testified on behalf of Defendant Cruz.

CHRONOLOGY OF EVENTS:

11/12/2004      Maria Uriarte checked into Holiday Inn Bradenton-
                Riverfront, Bradenton, FL, providing a copy of
                her California driver's license B321974, issued
                to "Maria Sofia Uriarte, 1040 Norman Court, Long
                Beach, CA, 90813" and date of birth "9/18/1973." (Def. Exh. 1).

11/12/2004      Maria Uriarte had checked out of the Ramada
                Inn, Ellenton, Florida.  Agents located Maria
                Uriarte and Rodolpho Cruz at Holiday Inn,
                Bradenton, FL.  (Dkt. 51-1, p. 4).

                Surveillance using a court-authorized pen register
                revealed telephone calls between Robert Masias
                and a cellular number registered to Maria Uriarte.
                (Dkt. 51-1, p. 4).

Case No. 8:07-CR-387-T-17MAP

| | |
|---|---|
| 11/12/2004 | Agents observed Maria Uriarte in a 2003 Range Rover, beginning on 11/12/2004, on at least ten occasions, as either driver or passenger. (Dkt. 51-1, p. 2). |
| 11/13/2004 | Traffic stop of the 2003 Range Rover. Occupants of the Range Rover were identified by their driver's licenses and/or identification cards. As to Rodolpho Cruz (driver), records showed a suspended California driver's license. Pedro Medina was a passenger in the vehicle. (Dkt. 51-1, p. 4 ). |
| 11/16/2004 | Agents conducted surveillance of the 2003 Range Rover; the 2003 Range Rover was observed at a public location; a "drug dog," "K-9 Noeska" alerted to the presence of narcotics in the vehicle. (Dkt. 51-1, p. 5). |
| 11/17/2004 | Agents obtained a search warrant for a tracking device. (Dkt. 51-1, pp. 1-6). |
| | Dkt. 51-1, pp. 1-6, is the Affidavit of Daniel B. Gordon, Special Agent for the Drug Enforcement Administration, dated November 17, 2004, seeking authorization for the Drug Enforcement Administration, Manatee County Sheriff's Office, and other law enforcement representatives to surreptitiously install, maintain, replace and remove a mobile tracking device in the Range Rover. |
| 11/18/2004 | A tracking device was installed. |
| 11/19-11/21/2004 | The 2003 Range Rover was tracked. |
| 11/22/2004 | At the request of DEA Agent Dan Gordon, there was a traffic stop of the 2003 Range Rover. At the traffic stop, a "drug dog" alerted. The "drug dog," "K-9 Jewels," was trained and certified in the detection of illegal drugs, including marijuana, cocaine HCL, cocaine base, heroin, methamphetamine and M.D.M.A. (Def. Exh. 2, p. 2). |
| | The Range Rover was driven to a gas station at next exit, and then put on a lift. The currency was found. (estimated $265,000). |

3

Case No. 8:07-CR-387-T-17MAP

The 2003 Range Rover and currency were seized. The occupants, vehicle and currency were photographed. No fingerprints were taken. The occupants were interviewed. The occupants and luggage were then taken to a motel. The occupants included:

Maria Uriate (sic) - driver
Rodolfo (sic) Cruz - passenger
Prudencio Uriate, Jr.- passenger
Jose Luis Gutierrez - passenger
(Def. Exh. 2, pp. 1-7).

A warning notice was issued to Maria Uriarte, 1040 Norman Court, Long Beach, CA, D/L B3219744, on 11/22/2014 for two traffic violations. (Def. Exh. 2, p. 8). The driver's license information was checked on 11/30/2014 and reported to be valid. (Def. Exh. 2, p.11).

The registration provided on 11/22/2004 was checked and reported to be valid from 7/20/2004 to 7/20/2005. (Def. Exh. 2, p. 9).

The out of state driver's license information, California D/L B9124489, for "Rodolfo Cruz, 122 W. 42nd Pl., Los Angeles, CA," date of birth on 9/14/1970, was checked on 11/30/2004, and was reported suspended or revoked. (Def. Exh. 2, p. 10).

The out of state driver's license information for "Prudencio Uriarte, Jr., 1040 Norman Court, Long Beach, CA," date of birth 7/2/1979, was checked on 11/30/2004, and reported to be valid. (Def. Exh. 2, p. 12).

The out of state driver's license information for Jose Luis Gutierrez, 14719 Jetmore Ave., Paramount, CA, was checked on 11/30/2004,   and reported to be suspended or revoked. (Def. Exh. 2, p. 13).

The 2003 Range Rover was impounded and later picked up by DEA. (FHP Offense  Incident Report of 12/1/2004 , Def. Ex. 2, p. 7).

4

Case No. 8:07-CR-387-T-17MAP

| | |
|---|---|
| 11/17/2005 | Case No. 05-CR-498-T-17AEP<br>U.S. v. Espinoza-Salazar, et al.,<br>was commenced by filing of indictment,<br>(17 co-defendants) including<br>Pedro Medina-Villegas and Maria Reyes-Marines. |

Maria Reyes-Marines (daughter of Pedro Medina-Villegas, sister of Pedro Medina) entered into a plea agreement on April 25, 2006 (Dkt. 260). She was sentenced on November 2, 2006. (Dkt. 420). The Government moved for downward departure on the basis of Defendant's substantial assistance at that time. (Dkt. 421).

A photo of Defendant Cruz was provided to Defendant Maria Reyes-Marines; she identified the subject as her uncle. (Pollock testimony).

Maria Reyes-Marines could not provide the location of Defendant Rodolpho Cruz; Defendant Reyes-Marines did not provide a date of birth, a social security number, an FBI number or fingerprints of Rodolpho Cruz. Her belief was that Rodolpho Cruz and Maria Uriarte were husband and wife, that at some time prior to the interview, they were separated, and Maria Uriarte moved to San Francisco. Defendant Reyes-Marines provided the aliases "Angel Villegas" and "Kilo." (Pollock testimony).

8/10/2006     Robert Masias, a defendant in Case No. 8:05-CR-498-T-17, entered into a plea agreement on 8/10/2006. (Dkt. 327). Defendant Masias' change of plea hearing was set for 9/7/2006. (Dkt. 330), Defendant Masias' change of plea hearing was rescheduled for 1/4/2007. (Dkt. 474). Defendant Masias was sentenced on 4/5/2007. (Dkts. 621, 622). On February 5, 2009, the Government filed a Rule 35 Motion. (Dkt. 815). The Court conducted a Rule 35 hearing on February 20, 2009. (Dkt. 824). An Amended Judgment was entered on February 23, 2009. (Dkt. 825).

Case No. 8:07-CR-387-T-17MAP

> Defendant Masias provided the aliases "Angel Villegas" and
> "Kilo" to the Government at some time before 9/25/2007 (filing of
> Rodolpho Cruz' indictment listing two aliases). (Pollock testimony).

11/16/2006   Case No. 8:06-CR-472-T-17TGW
            U.S. v. Miguel A. Rendon,
            commenced by filing of indictment.

8/22/2007   Case No. 8:07-CR-332-T-30EAJ
            U.S. v. Pedro Medina
            a/k/a "Junior," a/k/a "Nono,"
            commenced by filing of indictment.

9/18/2007   Case No. 8:07-CR-374-T-26TBM
            U.S. v. Michael S. Clarke,
            commenced by filing of indictment.

            Scope of drug distribution conspiracy
            operating in Manatee County and other
            jurisdictions (Dkt. 76, p.1); voluminous
            discovery and ongoing investigation in
            2007 (Dkt. 21, Joint Motion to Continue Trial,
            filed 11/7/2007).

9/25/2007   Case No. 8:07-CR-387-T-17MAP,
            U.S. v. Rodolpho Cruz, a/k/a
            "Angel Villegas," a/k/a "Kilo,"
            commenced by the filing of
            an indictment.

            Rodolpho Cruz was charged by grand jury
            indictment with conspiracy to distribute, and to
            possess with intent to distribute, five kilograms
            or more of a mixture or substance containing a
            detectable amount of cocaine, at least in or
            around Spring 2004 and in or around
            Summer, 2005.  The indictment involved in part
            the currency seizure of 11/22/2004.

            The warrant names "Rodolpho Cruz, a/k/a
            'Angel Villegas,' and a/k/a 'Kilo.'" (Dkt. 14).

Case No. 8:07-CR-387-T-17MAP

| | |
|---|---|
| 11/1/2007 | Pedro Medina, a/k/a "Junior," nephew of Angel Villegas,  entered into a plea agreement (Dkt. 35) in Case No. 8:07-CR-332-T-30EAJ.  A Change of Plea hearing was conducted on 11/7/2007. (Dkt. 36). |
| 4/28/2008 | Indictment unsealed in 8:07-CR-387-T-17MAP. |
| | After ten days, DEA delegates a fugitive warrant to the USM for further investigation; USM becomes primary and DEA is in a follow-up capacity; DEA produces annual reports as to fugitive warrants,  checks with US Attorney to verify the prosecution is continuing; checks with USM for updates; a warrants' check is done to make sure the warrant remains in the system; an EPIC check is done for border crossings.  (Pollock testimony). |
| | Agent Pollock testified that his partner, Dan Gordon, had a law enforcement agent in California go to Maria Uriarte's address to attempt to locate Defendant Cruz, with negative results.  (Pollock testimony). |
| 5/2008 | The fugitive warrant was delegated to DUSM. |
| | A photo of Defendant and a case synopsis were provided to the USM; the DEA investigative materials and the FHP report of the 11/22/2014  traffic stop were not provided. (Lavallee testimony). |
| 8/27/2008 | Defendant Pedro Medina was sentenced on 8/27/2008.  (Dkt. 52).  The Government moved for downward departure at that time on the basis of Defendant's substantial assistance. (Dkt. 51). |
| | Pedro Medina could not provide information as to the location of Defendant  Rodolpho Cruz. (Pollock testimony). |

Case No. 8:07-CR-387-T-17MAP

2008 - 2013          According to testimony of DUSM Lavallee,
                     the USM case file is full of positive NCIC hits for
                     "Rodolpho Cruz." There was an overwhelming
                     amount of information on Rodolpho Cruz and aliases,
                     including numerous names, dates of birth, SSN's.
                     DUSM Lavallee testified that there were multiple
                     positive hits for a "Rodolpho Cruz" with the same
                     reported birth date, who was not the "Rodolpho Cruz"
                     sought by the USM in this case.

                     If there is a traffic stop, the USM determines if the
                     person stopped is the same person sought on an
                     outstanding fugitive warrant. If a person is in custody,
                     and held on detainer, the USM verifies that the person held on
                     detainer is the same person sought on the fugitive warrant.

                     DUSM Lavallee testified that twice a person was detained
                     who turned out not to be the person sought on the outstanding
                     warrant in this case.

12/2013              Case reassigned to DUSM Jeff Lavallee

                     Other DUSMs (1 or 2) handled this warrant before DUSM
                     Lavallee. USM learned of aliases prior to December, 2013.
                     (Lavallee testimony).

12/2014              DUSM Lavallee stopped looking for Rodolpho
                     Cruz or Angel Villegas and looked in data
                     bases for Maria Uriarte. DUSM Lavallee found
                     the Donovan Street listing.

                     DUSM Lavallee checked for "locatable"
                     information such as magazine subscriptions or
                     utility bills for Rodolpho Cruz or Angel Villegas
                     in connection with Donovan Street address.
                     There were none. (Lavallee  testimony).

1/2015               DUSM Lavallee sent a collateral lead request to USM in Los
                     Angeles, California, to attempt to locate the fugitive, or locate Maria
                     Uriarte, to attempt to interview Maria Uriarte as a girlfriend of
                     Defendant Cruz.

Case No. 8:07-CR-387-T-17MAP

|  | DUSM Lavallee testified that the USM did not have DMV information for Maria Uriarte until that time. |
|---|---|
| 2/16/2015 | There was an unrelated surveillance and currency seizure involving 8525 Donovan St., Downey, CA (Dkt. 51-9, pp. 1-8). This triggered an alert that was sent to an agent in Tampa. |
| 3/24/2015 | Arrest of Angel Villegas.  When Defendant Cruz was arrested, he identified himself as "Angel Villegas." At arraignment on 3/24/2015, Defendant stated his true name is "Angel Villegas."  (Dkt. 8, p. 2). |
| 5/4/2015 | NCIC report provided to the Government by Agent Pollock.

The NCIC report includes the following arrests:

6/7/2007 arrest of "Paul Anthony Solis," in Lakewood, CA for "Felon in possession of a Firearm"   ( Dkt. 49-2, p. 16)

4/16/2009 arrest of "Angel Villegas" in Lakewood, CA for "Possession of money/ etc: Sale of Controlled Substance" (Dkt. 49-2, p. 18)

2/20/2013 arrest of "Angel Villegas" in Newton, CA for "Failure to Appear: Written Promise." (Dkt. 49-2, p. 18). |
| 7/28/2015 | NCIC Report includes 11 aliases, 6 dates of birth, 2 social security numbers (Gov. Exh. 1). |
| 7/29/2015 | Sofia Valencia identified Defendant Cruz as Angel Villegas, her step-father.  She testified that she knew him only as Angel Villegas. |

9

Case No. 8:07-CR-387-T-17MAP

> Sofia Valencia further testified
> that "1040 Norman Court, Long Beach, CA,"
> was a residence belonging to her grandparents, and
> that she had resided there with Maria Uriarte, her
> mother.  She further testified that Angel Villegas
> never resided at 1040 Norman Court, Long
> Beach, CA, but had visited that address on
> many occasions.

> Sofia Valencia testified that Angel Villegas lived
> with Maria Uriarte continuously from when Sofia
> Valencia was six years old until she was twenty-one years
> old (fifteen years).

> Sofia Valencia testified that Angel Villegas resided
> with Maria Uriarte as follows:

> Harvard Street, Bellflower, CA       3-5 years

> Flower Street, Bellflower, CA        3-5 years

> Donovan Street, Downey, CA           3-5 years

> Sofia Valencia testified that "Angel Villegas" would
> not appear on any records as to the Donovan Street
> residence.

> Sofia Valencia denied knowledge of any police
> activity at the Donovan Street address in 2015.

## II. CONCLUSIONS OF LAW

In Barker v. Wingo, 407 U.S. 514 (1972), the Supreme Court established a four-factor test to determine when a defendant's Sixth Amendment right to a speedy trial has been violated.  The four factors are: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of the speedy trial right; and 4) the prejudice to the defendant.  The Eleventh Circuit Court of Appeals explains the Barker test:

Case No. 8:07-CR-387-T-17MAP

> "[T]o trigger a speedy trial analysis, an accused must allege that the
> interval between accusation and trial has crossed the threshold dividing
> ordinary from 'presumptively prejudicial' delay...." <u>Doggett v. United
> States</u>, 505 U.S. 647, 651–52, 112 S.Ct. 2686, 2690–91, 120 L.Ed.2d 520
> (1992) (citing <u>Barker</u>, 407 U.S. at 530–31, 92 S.Ct. at 2192). "Only if this
> threshold point is satisfied may the court proceed with the final three
> factors in the <u>Barker</u> analysis." <u>Clark</u>, 83 F.3d at 1352. Delays exceeding
> one year are generally found to be "presumptively prejudicial." <u>Doggett</u>,
> 505 U.S. at 652 n. 1, 112 S.Ct. at 2691 n. 1; see also <u>Clark</u>, 83 F.3d at
> 1352. If, after the threshold inquiry is satisfied and the second and third
> factor are considered, all three of these factors weigh heavily against the
> Government, the defendant need not show actual prejudice (the fourth
> factor) to succeed in showing a violation of his right to a speedy trial.
> <u>Doggett</u>, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520.

<u>United States v. Ingram</u>, 446 F.3d 1332, 1336 (11th Cir. 2006).

None of the four <u>Barker</u> factors is a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. The four factors are related, and must considered together with such other circumstances as may be relevant. <u>Barker</u> at 533. If prejudice is presumed, the Government can overcome that presumption by showing that the presumption is extenuated, as by the defendant's acquiescence, or by persuasive rebuttal.

A. Threshold Determination

The length of the delay serves as a threshold inquiry that the defendant must satisfy in order for the Court to weigh the remaining three factors.

A delay is considered presumptively prejudicial as it approaches one year. <u>United States v. Davenport</u>, 935 F.2d 1223, 1239 (11th Cir. 1991). In this case, the Indictment was returned on September 25, 2007 (Dkt. 1). Defendant Cruz was arrested on March 24, 2015 in California. This case was originally set for trial in June, 2015, and is now set for trial in November, 2015. The length of the post-indictment delay is

11

Case No. 8:07-CR-387-T-17MAP

eight years.

The Court finds, and the Government concedes, that the length of the post-indictment delay is sufficient for the Court to consider the other <u>Barker</u> factors.

B. Length of Delay

This factor also examines "the extent to which the delay stretches beyond the bare minimum needed" to satisfy the threshold showing of presumptive prejudice. <u>Doggett</u>, 505 U.S. at 652, 12 S. Ct. 2686, 120 L.Ed.2d 520.  The longer the pretrial delay extends beyond the "bare minimum" necessary to show presumptive prejudice, the stronger the presumption that the pretrial delay prejudiced the defendant. <u>Id</u>. at 652, 655-57, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520.  The length of the delay itself weighs against the government incrementally, increasing in weight as the delay becomes increasingly protracted, and a particularly lengthy delay may also affect [the Court's] analysis of the fourth <u>Barker</u> factor.   <u>United States v. Villareal</u>, 613 F.3d 1344, 1350 (11th Cir. 2010). Pre-indictment delay may cause post-indictment delay to weigh more heavily. <u>United States v. Ingram</u>, 446 F.3d 1332, 1339 (11th Cir. 2006). Defendant Cruz argues that the pre-indictment delay from 2004 to 2007 compounds the post-indictment delay.  (Dkt. 51, p. 8).

The length of post-indictment delay extends significantly beyond the minimum necessary to show presumptive prejudice. <u>Doggett v. U.S.</u>, 505 U.S. 647, 652 (1992). The Government concedes that the length of the delay in this case is presumptively prejudicial (Dkt. 50, p. 4).

After consideration, the Court weighs this factor against the Government.

12

Case No. 8:07-CR-387-T-17MAP

C. Reason for the Delay

Defendant Cruz argues that the reason for the delay should be weighed heavily against the Government, as the Government's efforts to locate Defendant Cruz prior to his arrest in 2015 were neither continuous nor diligent.  Defendant Cruz contends that the information within the NCIC report on Defendant was sufficient to enable Defendant Cruz to be located.  Defendant Cruz points out that the Government knew in 2007 that Defendant Rodolpho Cruz was also known as "Angel Villegas" and "Kilo," and that, in 2009, arrest records concerning "Angel Villegas" were provided to the Department of Justice.  Defendant Cruz also points out that California arrest records of "Angel Villegas" contain photographs.

The Government argues that the delay should be weighed heavily against Defendant Cruz, who caused it by providing false identifying information at the time of the traffic stop in 2004.  The Government argues that, prior to Defendant's arrest, the NCIC report was not available to the Government; the Government did not know Defendant's true identity or specific identifiers necessary to obtain the criminal history report on which Defendant relies.  The only identifying information secured at the time of the 2004 encounter, aside from photographs of Defendant Cruz, was false information provided by Defendant Cruz, via the fraudulent California driver's license which identified Defendant as "Rodolpho Cruz," with a date of birth of September 14, 1970, and an address in Los Angeles, California (an address different from the address given by Maria Uriarte).  The Government argues that the Government did not have an accurate date of birth, social security number, FBI number, fingerprints, or other identifying information.  What the Government did have was a name associated to an individual other than Defendant, that individual's date of birth, an address which was not Defendant's address, Defendant's photograph, and other names for Defendant provided by coconspirators.

13

Case No. 8:07-CR-387-T-17MAP

The Government also argues that efforts were made to locate Defendant. The indictment was unsealed in order that Defendant's arrest warrant could be entered into national data bases. During Defendant's fugitive status, the system produced hits regarding arrests and border crossings concerning Rudy or Rodolpho Cruz, which were investigated and determined to be false leads. Following the return of the indictment, the United States Drug Enforcement Administration (DEA) turned the fugitive investigation over to the United States Marshals Service (USMS). DEA monitored the case, receiving the false positive reports, produced annual reports summarizing the fugitive status of Defendant, and maintained contact with the USMS regarding the status of the outstanding warrant. The USMS maintained the active warrant, and examined any false positive hits. At least one of the false positive reports resulted in the arrest of a Rodolpho Cruz, who was held until the USMS confirmed that the subject was not Defendant. In 2008, wage and hour and financial inquiries produced no useful results. In 2009, the FBI number in the file was removed as it pertained to a Rodolpho Cruz who was not the Defendant. In 2013, the matter was re-assigned to DUSM, who examined the file for potential leads. That DUSM, upon learning that the Rodolpho Cruz who was the subject of false alerts was in custody in California, sent a collateral request for an interview to see if that individual knew who had falsely used his name and date of birth. That Rodolpho Cruz was not interviewed prior to his release. The assigned DUSM further determined to look beyond Defendant and sought information on Maria Uriarte, Defendant's companion in the 2004 traffic stop. In early 2015, the DUSM discovered the Donovan Street address and sent a collateral request to California; however, Defendant Cruz was arrested before that request was acted upon.

The Government further argues that Defendant Cruz was arrested as a result of investigative activity in an unrelated matter. The Government explains that Maria Uriarte came to the attention of California authorities during an encounter at her residence. California agents entered her name in a data base which linked her to the Middle District of Florida investigation. An agent in Tampa was alerted, and the agent

14

Case No. 8:07-CR-387-T-17MAP

inquired whether Rodolpho Cruz or Angel Villegas was present during the encounter.
While awaiting a response, Defendant's photograph was sent to the California
authorities, who confirmed that Defendant Cruz was present during the encounter.  Law
enforcement returned to the residence at 8525 Donovan Street, Downey, California.
Defendant confirmed that his name was Angel Villegas, and was arrested.

The Government bears the burden of establishing valid reasons for the delay.
The Government has an affirmative constitutional obligation to try the defendant in a
timely manner.  United States v. Ingram, 446 F.3d 1332, 1337 (11th Cir. 2006).
However, a defendant who intentionally evades the Government's efforts to bring him to
trial is culpable in causing the delay.  Id (citing Rayborn v. Scully, 858 F.2d 84, 90 (2d
Cir. (1988)(court need not ignore a defendant's fugitivity in considering whether there
has been a violation of his sixth amendment right to speedy trial)).

The Government's failure to pursue a defendant diligently will weigh against it,
more or less heavily depending on if the Government acted in good or bad faith.  See
Ingram at 1339-1340.  The Court should accord different weights to different reasons
for delay.   A deliberate attempt to delay for the purpose of obtaining a tactical
advantage should be weighed more heavily against the Government; negligence or
overcrowded courts are weighed less heavily.  A valid reason, such as a missing
witness, may justify appropriate delay.  U.S. v. Villareal, 613 F.3d 1344, 1351 (11th Cir.
2010).

It is undisputed that the Government did not intentionally delay bringing
Defendant Cruz to trial in order to obtain a tactical advantage.  Defendant Cruz was a
fugitive from justice from the time the indictment was returned in 2007 until Defendant's
arrest in 2015.  A "fugitive from justice" means that, having committed an act in one
state which, by the law of the state, constitutes a crime, [a fugitive] has afterwards
departed from its jurisdiction and when sought to be prosecuted, is found within the

15

Case No. 8:07-CR-387-T-17MAP

territory of another state.   Hogan v. O'Neill, 255 U.S. 52, 56 (1921).  The Government did not know where Defendant Cruz was between 2004 and 2015, beyond the suspicion that Defendant Cruz was in California.   Because Defendant Cruz did not provide his "real name" and other accurate identifying information, such as Defendant's accurate date of birth and an accurate social security number, but instead provided a name and date of birth for a real person who was not the defendant, Defendant Cruz intentionally inhibited the Government's efforts to apprehend Defendant Cruz.  The Government attempted to learn of Defendant Cruz' whereabouts from other family members, but that information was not provided.  The Government's knowledge of Defendant Cruz' real name, Angel Villegas, in the absence of other accurate identifying information, did not substantially improve the Government's ability to apprehend Defendant.   The investigatory record pointed in more than one direction; the Government followed leads that did not pan out.

        This case is distinguishable from Doggett, in which the defendant lived openly under his own name and a credit check located the defendant within minutes, Ingram, in which the defendant lived openly under his own name and the Government knew where the defendant lived and worked, or U.S. v. Black, 416 F.Supp. 59 (M.D. Fla. 1976)(Customs Service had billfold containing id cards and other identifying information; the documents were not brought to the attention of the USM; defendant was not a fugitive; defendant was enrolled in school under same name as in indictment).   There are some troubling aspects to this case; the DEA had information that the USMS did not have, including knowledge of accurate driver's license information for Maria Uriarte and knowledge of the husband/wife relationship of Maria Uriarte and Defendant Cruz.  The Court nevertheless concludes that the Government acted with reasonable diligence under the circumstances.   The Court must focus on the Government's knowledge at the time, in light of the limited facts then known, and will not evaluate the facts with the clarity of hindsight.

Case No. 8:07-CR-387-T-17MAP

After consideration, the Court weighs this factor heavily against Defendant Cruz. The false identifying information provided by Defendant was the primary cause of the delay. The inaccurate information was intentionally provided to law enforcement to obscure Defendant Cruz' connection to the crime charged in the indictment, and to make it more difficult to apprehend Defendant Cruz. The delay caused by Defendant Cruz plainly outweighs any delay caused by the Government's investigation.

C. Defendant's Assertion of Speedy Trial Right

Defendant Cruz asserts that Defendant was not aware of the indictment or arrest warrant before his arrest in 2015.

The Government concedes that the Government has no information that Defendant Cruz was aware of the indictment or arrest warrant.

After consideration, this factor weighs against the Government.

D. Prejudice

Defendant Cruz relies on the presumption of prejudice arising from the length of the delay. The Government argues that Defendant Cruz has not demonstrated actual prejudice caused by the delay.

The Court must view prejudice in light of the interests underlying the right to speedy trial: 1) to prevent oppressive pretrial incarceration; 2) to minimize anxiety and concern of the accused; and 3) to limit the possibility that the defense will be impaired. Barker v. Wingo, 407 U.S. 514, 532 (1972). The third interest is the most serious, because the inability of a defendant to adequately prepare his case skews the fairness of the entire system. Id.

17

Case No. 8:07-CR-387-T-17MAP

Because Defendant Cruz was not arrested until 2015, and because Defendant Cruz asserts he did not know of the indictment until his arrest, the first two interests are not implicated in this case. Defendant Cruz has not identified actual prejudice to Defendant's defense.

The Court has found that this case is not an extreme case of governmental negligence such as that found in Doggett, in which the defendant was relieved of the need to show actual prejudice, given the cause and the extent of the delay. The Court has found that delay in this case was primarily caused by Defendant Cruz. The Government has therefore overcome the presumption of prejudice.

After consideration, the Court denies Defendant's Motion to Dismiss Based on a Violation of Defendant's Constitutional Right to Speedy Trial. While the length of the delay, and Defendant's assertion of his right to speedy trial weigh against the Government, the reason for the delay weighs heavily against Defendant Cruz. Defendant Cruz has not identified actual prejudice caused by the length of the delay. Accordingly, it is

**ORDERED** that Defendant's Motion to Dismiss Based on a Violation of Defendant's Constitutional Right to a Speedy Trial (Dkt. 49) is **denied.**

Case No. 8:07-CR-387-T-17MAP

**DONE and ORDERED** in Chambers in Tampa, Florida on this ⁄4th day of

September, 2015.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record

19